UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICA LOAIZA, | No. 2:23-cv-01964-CKD |
| Plaintiff, | |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act"). The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1982, applied on November 9, 2017 for DIB, alleging disability beginning January 26, 2017. Administrative Transcript ("AT") 18, 30. Plaintiff alleged she was unable to work due to hypertension, pseudomotor cerebri, chronic bronchitis, sinus infection, major depression with panic disorder, GERD, allergies, PTSD, and sexual trauma. AT 312. In a

1

decision dated December 7, 2022, the ALJ determined that plaintiff was not disabled.[1] AT 15-36. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2017.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 26, 2017 through her date last insured of December 31, 2017.
>
> 3. Through the date last insured, the claimant had the following severe impairments: major depressive disorder, anxiety disorder not otherwise specified; pseudotumor cerebri (also known as idiopathic intercranial hypertension).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work [with additional limitations]. Work is limited to simple, as defined in the DOT as SVP levels 1 or 2, routine and repetitive tasks. She is limited to low stress work, defined as having only occasional decision making required and only occasional changes in the work setting. She can have only occasional interaction with the public [and] coworkers.

6. Through the date last insured, the claimant was unable to perform any past relevant work.[2]

7. The claimant was born [in 1982] and was 35 years old, which is defined as a younger individual age 18-49, on the date last insured.

8. The claimant has at least a high-school education.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that the claimant could have performed.[3]

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 26, 2017, the alleged onset date, through December 31, 2017, the date last insured.

AT 20-31.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ did not fulfill her duty to develop the record at the administrative hearing; (2) the ALJ erred in finding that plaintiff's impairments did not meet or medically equal a psychological listing; and (3) the ALJ erred in failing to consider the combined effects of

---

[2] At the hearing, the vocational expert (VE) testified that plaintiff had previously worked as an administrative assistant, a benefits clerk, and a unit clerk in a hospital. AT 1376.

[3] Relying on VE testimony, the ALJ found that plaintiff could perform light exertional jobs such as cleaner, small parts assembler, and marker. AT 31.

plaintiff's physical and mental impairments, such that the RFC was not supported by substantial evidence.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

As a preliminary matter, the relevant period of alleged disability in this case is a roughly one-year period from January to December 2017. Thus, the undersigned will focus on evidence concerning that period.

A. Duty to Develop

The administrative hearing on plaintiff's disability application took place in Oakland, California on October 13, 2022. AT 1350. Plaintiff appeared in person and was represented by counsel. AT 1350. Shortly after plaintiff's attorney began questioning her, the hearing was interrupted by a fire drill; half an hour later, it resumed. AT 1357. Under questioning from her attorney, plaintiff testified about her mental symptoms, including how her depression affected her "day-to-day" living including sleep, speed of thinking and movement, energy levels, concentration, ability to do chores, and feelings of self-worth. AT 1358-1362. She next testified about how her anxiety affected her concentration, mood, and sleep, and also her post-traumatic stress symptoms. AT 1362-1366. Plaintiff then responded to a series of questions about "different work tasks and skills and [her] ability to do those, given the [mental] symptoms we just talked about." AT 1367-1371. Plaintiff's attorney then turned to physical impairments, with plaintiff testifying about symptoms from endometriosis, headaches, chronic bronchitis, limited mobility in her knees, ankles, and thighs; and carpal tunnel syndrome. AT 1372-1375.

At that point, the ALJ interjected:

> ALJ: Counsel, I think I've heard enough to have a proposed RFC. All right.
>
> ATTY: Okay.
>
> ALJ: So yes, were you going to say something else?
>
> ATTY: No, go ahead, Your Honor.

AT 1375.

After the VE testified, the ALJ asked plaintiff's attorney if they had "anything else," and plaintiff's attorney asked plaintiff one last question, which she answered. AT 1379-1380. Counsel informed the ALJ: "I don't have any further questions, your honor." AT 1380.

Plaintiff argues that "the ALJ failed in her duty to fully develop the record when she prematurely ended Ms. Loaiza's testimony." (ECF No. 15 at 12.) Plaintiff asserts that certain evidence in the third-party statement from plaintiff's sister, Marisol Loaiza, was ambiguous. The

1   ALJ's decision cited portions of the statement, noting that plaintiff's sister reported that plaintiff
2   "cleans around the house, either makes dinner or helps to make dinner, picks up her niece from
3   school at times, and runs errands, with frequent breaks between tasks. . . . [Plaintiff's sister]
4   reports that the claimant spends 1 to 3 hours cleaning, laundering, and grocery shopping[.]"  AT
5   28, citing AT 507-515.  Plaintiff argues that "it is ambiguous how long it takes Ms. Loaiza to
6   complete these tasks and how many breaks she needs.  Ms. Loaiza's full testimony was needed to
7   address these material facts."  ECF No. 15 at 11.

8   Plaintiff also argues that she should have been allowed to testify about the frequency of
9   "bad days," her limitations due to headaches and carpal tunnel syndrome, the "extent of her
10  ability to maintain concentration and attendance," and her ability to "maintain attention for
11  extended periods of time."  ECF No. 15 at 20.  Plaintiff contends that the evidence considered by
12  the ALJ on these issues was ambiguous, triggering the duty to develop.

13  The ALJ's duty to further develop the record is triggered where the evidence is ambiguous
14  or inadequate to allow for proper evaluation.  Mayes v. Massanari, 276 F.3d 453, 459–60 (9th
15  Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  A specific finding of
16  ambiguity or inadequacy in the record is not required to trigger the necessity to further develop
17  the record where the record itself establishes the ambiguity or inadequacy.  McLeod v. Astrue,
18  640 F.3d 881, 885 (9th Cir. 2011).

19  First, at the hearing, despite the interruption from the fire drill, plaintiff's attorney was
20  able to question her at length about her symptoms and limitations, telling the ALJ they had no
21  further questions before the hearing was concluded.  AT 1380.  The ALJ kept the record open for
22  two weeks after the hearing to allow plaintiff's attorney to submit any additional evidence.  AT
23  1355.  Thus, plaintiff's testimony was not ended "prematurely" in any meaningful way, though it
24  did end without covering every possible base, as is normal in such hearings.

25  Second, as defendant points out, inconsistent evidence is not the same as ambiguous
26  evidence.  The ALJ is tasked with resolving the former, while the latter triggers the duty to
27  develop.  See Zargi v. Comm'r of Soc. Sec., 2009 WL 1505311, *18 (E.D. Cal. May 27, 2009)
28  (regarding duty to develop, "[i]nconsistency is not the same as ambiguity.  Inconsistent evidence

1   is that which is not compatible with a particular explanation. In this case, the evidence . . . was
2   not ambiguous, which means incapable of explanation," and ALJ was able to resolve
3   inconsistencies without implicating duty to develop); see also Torres v. Comm'r Soc. Sec., 2020
4   WL 5820610, *8 (E.D. Cal. Sept. 30, 2020) (finding that, "[w]hile the various opinions are
5   contradictory and, thus, subject to the ALJ's interpretation to resolve the conflict, none of the
6   opinions themselves are ambiguous or otherwise unclear. . . . Simply because various opinions
7   present a conflict does not mean any particular opinion is ambiguous such as would trigger the
8   Commissioner's duty to develop the record.").
9         Here, the ALJ considered inconsistent evidence, including plaintiff's testimony about her
10  physical limitations, on the one hand, and other evidence that did not suggest the same level of
11  limitation.  See, e.g., AT 21 ("Although the claimant testified to pain and limited mobility in the
12  ankles, knees, and thighs, the evidence does not establish a medically determinable
13  musculoskeletal impairment . . . [and] contains no underlying objective evidence to support the
14  presence of an impairment during the period at issue"), AT 23 ("Although the claimant testified
15  to limitations from carpal tunnel syndrome (CTS), the evidence does not establish a severe
16  impairment prior to the date last insured. The record does not contain evidence of treatment or
17  complaints until July 2018 . . ."), AT 27 ("Although the claimant testified to weekly migraine
18  headaches so severe that they prevent her from performing most activities of daily living,
19  treatment records prior to the date last insured do not comport with this testimony.").
20        Moreover, in an unchallenged finding, the ALJ found plaintiff less than fully credible
21  about the intensity, persistence, and limiting effect of her symptoms, opting to rely on cited
22  evidence that contradicted her statements.  AT 26.  Plaintiff has not shown that the ALJ's duty to
23  develop the record was triggered by ambiguous, as opposed to inconsistent, evidence.
24        B.  Listings
25        Plaintiff asserts that the ALJ erred in finding that her impairments did not meet or
26  medically equal a psychological listing, specifically Listings 12.04 (depression)[4], 12.06

---

[4] In order to show that plaintiff's depression met listing-level severity, plaintiff must show that her impairment satisfied the criteria of Listing 12.04 (Affective Disorders).  Listing 12.04 requires a

1  (anxiety)[5], and 12.15 (trauma and stressor-related disorders). The ALJ found that "[t]he severity
2  of the claimant's mental impairments, considered singly and in combination, did not meet or
3  medically equal the criteria of listings 12.04 or 12.06 prior to the date last insured." AT 23. The
4  ALJ also found, at Step Two, that PTSD was not a medically determinable impairment "during
5  the period at issue." AT 21.

6  At Step Three, the ALJ determines whether "a claimant's impairment meets or equals an
7  impairment listed in [20 C.F.R. part 404, subpart P, appendix 1]." Tackett v. Apfel, 180 F.3d
8  1094, 1099 (9th Cir.1999). The Listing of Impairments describes specific impairments of each of
9  the major body systems "which are considered severe enough to prevent a person from doing any
10 gainful activity." Id. (citing 20 C.F.R. § 404.1525). If a claimant meets or equals a listed
11 impairment he or she will be found disabled at this step without further inquiry. Tackett, 180
12 F.3d at 1099 (citing 20 C.F.R. § 404.1520(d)). "An ALJ must evaluate the relevant evidence
13 before concluding that a claimant's impairments do not meet or equal a listed impairment. A
14 boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do
15 so." Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001). However, "[i]t is unnecessary to require
16 the Secretary, as a matter of law, to state why a claimant failed to satisfy every different section
17 of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990).

18 A claimant bears the burden of proving that his or her impairments satisfy all the criteria
19 of a particular listing. Tackett, 180 F.3d at 1099 ("[Claimant] had to establish that he [or she] met
20 or equaled each of the following characteristics of a listing."). "For a claimant to show that his
21 [or her] impairment matches a listing, it must meet all of the specified medical criteria. An
22 impairment that manifests only some of those criteria, no matter how severely, does not qualify."

---

claimant to prove that his or her medical impairments, whether singly or in combination, meet the criteria of both Paragraphs A and B or, alternatively, meet the criteria of Paragraph C. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04.

[5] In order to show that plaintiff's anxiety met listing-level severity, plaintiff must show that her impairment satisfied the criteria of Listing 12.06 (Anxiety Related Disorders). Listings 12.06 requires a claimant to prove that his or her medical impairments, whether singly or in combination, meet the criteria of both Paragraphs A and B or, alternatively, meet the criteria of both Paragraphs A and C. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06.

Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

In her Step Three analysis, the ALJ rated plaintiff's mental impairments in four areas of functioning known as the "paragraph B" criteria: understanding and applying information; interacting with others; concentrating, persisting, and maintain pace; and adapting or managing oneself. 20 C.F.R. Part 404, Subpart P, Appendix 1 §§ 12.04(B), 12.06(B), 12.15(B). To satisfy the paragraph B criteria, a claimant's mental disorder must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. App. 1 at § 12.00(A)(2)(b). "Extreme" means a claimant is "not able to function" while "marked" means that functioning is "seriously limited." Id. § 12.00(F). A "moderate" limitation, on the other hand, means that a claimant's functioning in a particular area is "fair." Id.

The ALJ found that plaintiff had a mild limitation in understanding, remembering, or applying information, citing psychological findings noting, e.g., "no observable deficits in memory or cognition" and an "excellent level of understanding." AT 23.

The ALJ found plaintiff moderately limited in interacting with others, noting that "medical and mental health providers consistently describe her as cooperative, pleasant, and polite, with normal speech and an appropriate demeanor." AT 24. The ALJ also noted plaintiff's testimony that she "tends to isolate herself from others and has a history of becoming argumentative in employment." AT 24.

The ALJ found plaintiff moderately limited in concentrating, persisting, or maintaining pace, noting her stated difficulty with "focusing and paying attention." AT 24. The ALJ also cited evidence of plaintiff's ability to concentrate and converse during evaluations. AT 24.

The ALJ found plaintiff moderately limited in managing herself, noting that she "has been able to seek out appropriate medical care and care for herself independently." AT 24. The ALJ also cited evidence that plaintiff was "not observed to display impulsivity, poor judgment, or behavioral abnormalities" and had denied suicidal ideation. AT 24.

The ALJ concluded:

> Because the claimant's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B criteria were not satisfied.

AT 24.  Accordingly, the ALJ determined that plaintiff's mental impairments did not meet the requirements of 12.04 and 12.06 prior to the date last insured—i.e., during 2017.  AT 23.

Earlier, at step two, the ALJ reviewed the evidence concerning PTSD, including the absence of a PTSD diagnosis during the relevant period and mental status examination findings not consistent with PTSD, and determined that it was a nonsevere impairment (unlike depression and anxiety, which the ALJ found to be severe).  AT 21.  Thus, the ALJ did not analyze this mental impairment under Listing 12.15.  However, the ALJ noted that she had "nevertheless considered overlapping symptomatology among mental impairments and have considered the claimant's reported symptoms of PTSD in assessing her functional limitations."  AT 21.

Plaintiff argues that she met the listing requirements for 12.04, 12.06, and 12.15, citing evidence purporting to show that she met the paragraph B criteria for all three listings.  ECF No. 13-17.  However, plaintiff does not specify which of this evidence is from 2017, as evidence outside that timeframe is less relevant.  Moreover, plaintiff does not attempt to explain why her mental impairments in the paragraph B areas render her unable to function ("extreme") or seriously limit her functioning ("marked").  General arguments—i.e., that plaintiff "was not able to maintain a regular work schedule . . . in 2016 due to frequent absences because her physical and mental health impairments" (ECF No. 15 at 16) do not suffice to show that plaintiff was, for example, unable to function due to an inability to maintain concentration and pace, during the relevant period.  Similarly, plaintiff's assertion that she "struggles to complete tasks and forgets things due to her impairments"  (ECF No. 15 at 17) does not show why such impairments were greater than the "moderate" level found by the ALJ and supported with record evidence.  See AT 26-27 (summarizing medical evidence of mental impairment), AT 29 (crediting opinions of state agency psychological consultants who found plaintiff "capable of understanding, remembering, and sustaining concentration, persistence, and pace for simple routines throughout a normal workday/workweek").  While plaintiff argues for a different interpretation of the mental health evidence, the ALJ evaluated the relevant evidence as required.  Substantial evidence in the record supports the ALJ's conclusion that plaintiff's depression, anxiety, and PTSD were not sufficiently severe to meet the criteria of listings 12.05, 12.05, or 12.15 during the relevant period, and

plaintiff has not shown error on this basis.

### C. Residual Functional Capacity

Lastly, plaintiff claims that the ALJ erred in failing to consider the combined effects of plaintiff's physical and mental impairments, such that the RFC was not supported by substantial evidence. She argues that, even if her conditions do not meet a listing, "the combined effect of her multiple impairments erodes her RFC and her ability to regularly attend work so significantly that she cannot perform any work in the national economy." ECF No. 15 at 18.

Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for assessing residual functional capacity. SSR 96-8p. Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). RFC is assessed based on the relevant evidence in the case record, including the medical history, medical source statements, and subjective descriptions and observations made by the claimant, family, neighbors, friends, or other persons. 20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3). When assessing RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work[.]" 20 C.F.R. §§ 404.1545(a)(4). As this court explained in an earlier case:

> 20 C.F.R. § 404.1523 . . . describes how multiple impairments are considered in the disability determination. It provides that two or more concurrent impairments may be considered severe in combination, and that the ALJ "will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." § 404.1523(c). [Section] 404.1545(a)(2) . . . provides that the ALJ "will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,'...when [assessing] your residual functional capacity." <u>While these regulations require the ALJ to consider the effect of all plaintiff's impairments in formulating the RFC, they do not require him to translate every non-severe impairment into a functional limitation in the RFC.</u>

Rania v. Kijakazi, 2021 WL 5771663, *3 (E.D. Cal. Dec. 6, 2021) (emphasis added).

Plaintiff first argues that the RFC should have included a limitation to occasional handling due to her carpal tunnel syndrome. ECF No. 15 at 18. However, the ALJ discussed the evidence

of carpal tunnel syndrome, noting that "the record does not contain evidence of treatment or complaints until July 2018." AT 24.  The ALJ also noted that plaintiff "did not allege carpal tunnel syndrome in her benefits application," and concluded that the evidence did not establish severe impairment from CTS in 2017.  AT 24.  Plaintiff essentially seeks to reweigh the evidence in her favor, but the ALJ's analysis of this issue is sufficient.

Plaintiff next argues that the RFC's limitation to occasional interaction with the public is not restrictive enough, given her history of anxiety, trauma, and PTSD.  ECF No. 15 at 18.  As noted above, the ALJ found plaintiff moderately limited in interacting with others.  AT 24.  Later in the decision, the ALJ noted that, "throughout the period at issue, mental status evaluations show modest findings" and "providers consistently observe her to present with appropriate demeanor and dress, normal speech, linear and rational thought process, fair to good insight and judgment, and no signs of delusions or circumstantial thinking."  AT 27.  The ALJ noted that plaintiff's medical records during the relevant period "indicate that providers consistently describe her as pleasant and do not report behavioral abnormalities[.]"  AT 27.  Plaintiff has not shown she is more limited in this area than the RFC reflects.

Plaintiff lastly argues that her frequent absences from work due to multiple impairments, including headaches, make her "unable to maintain any job." ECF No. 15 at 18.  Again, this amounts to a reinterpretation of the evidence in plaintiff's favor.  Focusing on the period at issue, the ALJ noted that "[a]s of November 17, 2017, the claimant reported headaches twice per week but stated that they were not severe.  She further reported that the only severe headache she had experienced in two months was on the day of the appointment; she attributed the headache to forgetting to take her medication for two days."  AT 28; see also AT 29 (noting "evidence of controlled headaches with medication" during 2017).  The ALJ relied on the opinions of the state agency medical consultants, who found plaintiff capable of medium work during the period in question, which the ALJ reduced to light in plaintiff's favor.  AT 29.  Based on the foregoing, the court concludes that plaintiff's assessed RFC was adequately explained and grounded in substantial evidence.

////

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF Nos. 15) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 19) is granted;

3. Plaintiff's filing at ECF No. 21 is properly characterized as a reply, not a separate motion as the docket suggests; and

4. Judgment is entered for the Commissioner.

Dated: July 25, 2024

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE